Good morning, Your Honors. May it please the Court, my name is Scott Ikeda. I'm an Assistant Attorney General and I represent the appellants in this case. There's absolutely nothing unusual about a party seeking costs consistent with the rules, and that's exactly what the appellants did in this case. Plaintiffs don't think that they should have to pay costs with absolutely no current evidence of their indigence or future indigence. And the district court ignored that plaintiffs had already agreed to pay 50 percent of the 706 expert costs during the litigation when they were supposedly unable to pay. An agreement not binding on the court, right? An agreement, correct, not binding on the court. Proceed. Proceed. If I could, Your Honor, just briefly respond to that. The district court did indicate, and the rules indicate, that it's a taxable cost at the end. And the district court referred to the payment as an initial allocation of the payment subject to the Rule 54 taxation at the end. The appellants believe that the district court abused its discretion in denying any fees. So we — the appellants here were zeroed out with no evidence in the record. The court — the district court denied any fees without any evidence of actual indigence. And, in fact, Your Honors, the district court so denied based on facts that are demonstrably not accurate. So we know that at least one of the 14 named plaintiffs is not actually in custody of the sex offender program, as we pointed out in the reply brief. If the court looks at the district court's order and the appellee's — Why does that matter? Because it — You just want to nitpick the courts? No, Your Honor. The district court relied upon the fact that all 14 remain at the sex offender program and, therefore, were — continued to be unable to pay. Being at the sex offender program does not necessarily mean an inability to pay. There were 13 years, the intervening years, between the — the IFP application and the decision in the case. Let's step back and look at the big picture. What happens if we reverse? You tell me what's going to happen. Yeah. I think there are a couple of things that can happen. I think if it's a — if it's a straight — No, I want your — I want your prediction. What do you — what do you think? What will you advocate if we reverse? Well, we certainly ask that the — that we believe that the appellees had multiple opportunities to put evidence in the record. They did not. It is clearly their burden to do so. So we would — That's not responsive. Your Honor, we would — we would like the district court to tax the cost, the full amount of the cost. And as we noted in a footnote in our reply brief, that doesn't necessarily mean that we would be able to collect on the cost. It means that we would have the judgment and we would determine whether it was appropriate to pursue. Have the experts been paid? The experts have been paid, Your Honor, because the district court, when it appointed the experts, required my clients to deposit $1.8 million into the court's bank account. And the experts were basically making the case for the plaintiffs, as I recall, in this case. And the defendants were paying for that. Correct, Your Honor. They're now saying we should get it back. Get the costs back. Right, Your Honor. My clients, the appellants, opposed and objected to the district court's appointment of 706 experts. And, Your Honor, it is — I know that you were on the Carsons 1 panel. The district court here, when it appointed the 706 experts, it followed a motion by the plaintiffs saying we would like you to order payment of our expert costs. If you can't do that, we suggest you appoint 706 experts. The district court appointed those 706 experts. Its work overlapped with the items that the plaintiffs indicated that it needed in order to try the case. Respectfully, we believe that we should not have to pay for the experts that the plaintiffs asked for in this case. I thought you were ready to pay for half of it. Pardon me? I thought you made an agreement to pay for half of it. Correct. We would have paid for half of it, but subject to taxation at the end. So this point, Judge Benton, is if the district court had followed the party's agreement and each side paid half, there's no doubt that the plaintiffs would be out half of those costs because they wouldn't be able to come and tax those costs at the end since they weren't a prevailing party. So clearly the plaintiffs had some ability to pay for half of the 706 expert costs, like at that point in the litigation, because they'd already agreed to, and it wasn't something that prevailed under Rule 54. Now, did you — the district court didn't address this $350,000 offer in its order. Was it presented to the judge as a reason to tax or as evidence of ability to pay? We did point out that the parties had already agreed to pay for half, yes, Your Honor, in the briefing below. There was no hearing, though. No, Your Honor. It asked for a hearing. The plaintiffs asked for a hearing, and then the judge just went ahead and said, I'll rely on the IFP affidavits. Is that correct? That's correct, Your Honor. Yeah. The district court — the plaintiffs, again, did not put in evidence of their financial circumstances. What's the relevance of ability to pay? You say you want the full amount taxed. Suppose the case goes back and, you know, maybe one or two of them has some earning potential and the rest don't, and the lawyers say, well, we agreed — somehow you can get in that the lawyers agreed to pay the $350,000, but it was one time only and they wouldn't agree to pay if they're taxed at the end. You know, they contracted around the taxation. Can the court reduce the amount because of inability to pay in that scenario, or? I believe, Judge, under the case law, the court has discretion to reduce the amount of the judgment. The court just has to determine — because the analysis is not just whether they can pay. The analysis is whether it's foreseeable that they can't ever pay in the future. So the court can do that analysis. Is that true? Does it extend into the future? It does. If they're unable to pay now but the judge projects that they could pay over 20 years, that he's supposed to order the cost? I believe so, Your Honor, because if you look at this Court's Lampkin — I think it's Lampkin's, if I'm remembering right. But there's a — there's a case that talks about not just the inability to pay presently but the future inability to pay. So I believe it was a case where it was an incarcerated individual where the court taxed costs against someone who was in prison at the time and who had the present inability to pay. But, yes, on remand, you know, certainly one of the options is that the district court could have the hearing that the plaintiffs said, hey, if you don't have enough from me, I can certainly present evidence for you. But we think the local rules — So next we'll have economics experts on lifetime earnings of some people. Correct. I don't know that that's necessarily what follows. That looks like where you're going, by the way. You ordered that so carefully, your last answer. No. I guess, Your Honor, I don't think of this — I don't think of this as evidence on lifetime earnings. And most people aren't qualified to do that, trust me. Yeah. You know, I don't think that this is like a — I think the way that I'm hearing the question is in the context of like a personal injury kind of damages claim. And this isn't really — Let's use many other branches of the field besides personal injury. Sure. Defense lawyers use it, too. Sure. And I'm not — I'm not thinking that it's that kind of evidence. But I guess I don't know what it looks like on remand. I'm thinking that there's evidence of — what we know is that there are two individuals who are not at MSOP, one who's fully discharged, the other one who lives in the community and presumably is working. We just don't know because there's no record. But I think to get back to Judge Colleton, sort of the point that I was getting at is the district court here zeroed my clients out with no evidence. I mean, zeroed the — zeroed my clients out without any evidence of whether there was someone somewhere who could pay. And frankly, like, what we don't know, too, is whose responsibility it is to make the payment. And so the — so the district court did all of this without any kind of inquiry. And so certainly a remand could explore that. What do you mean whose responsibility? I thought the costs had to be taxed against parties. Correct. The costs would be taxed against the parties. Do you mean which of the parties? No, there's — I can't remember the specific case that we cited in our brief, but there was a case that talked about where an actual party was unable to pay, but due to a retainer agreement, it was the attorney who had the responsibility to pay. And so the court should have at least analyzed whether it was actually the parties who had the obligation to pay. Well, of course, they shot that through. They — I don't know what they swore, but they stressed that the attorneys weren't getting paid. Didn't they put that in a footnote somewhere? Oh, I don't think that — Oh, okay. I got the wrong picture. I think they said that they were — I believe that they were — what they said was I believe that they were in 1983. They were referred by the — They had no retainer agreement. Correct. They had no retainer agreement, which is — But they apparently agreed to pay $350, is what you're saying, at the beginning. And then maybe they said, but we won't pay tax costs at the end. But are you arguing, well, in that situation, the judge can still order $350 to deter lawyers from — you know, or to encourage plaintiffs to get the lawyers to agree in the future? I'm suggesting, Your Honor, that the $350,000 is an indication that someone had some ability to pay at some point in the case, and this was after the IFP applications. And so we know that relying solely on the IFP applications, which is what the district court did here, was probably not the best thing for the district court to do, and certainly not the best thing for the district court to do when it was 13 — I believe 13 years old at that point, and relying on facts that are demonstrably just inaccurate as it relates to custody status. Do you agree that only the named plaintiffs could be assessed the cost and not the whole class? Correct, Your Honor. I think that goes to the question — the second argument of the appellees, which is that we waived this argument. And we're not asking for a judgment against the Plaintiffs' Counsel. No, no, no. The only judgment that we're asking for is — I wasn't asking about counsel. I was asking about the unnamed class members. Do you agree that they should not be assessed? We absolutely agree with that, Your Honor. And the attorneys, right? I'm sorry? And the attorneys. We're not seeking a judgment against the attorneys. Correct. Proceed. Yeah. Your Honor, the other sort of — other points that I wanted to touch on is that, you know, the district court relied on the good faith of the plaintiffs' litigation. We think that that, for the reasons in the brief, that's just duplicative of a lawyer's obligation to bring cases in good faith. The issue of a chilling effect was not briefed below by the parties. That was not argued by the plaintiffs. That was something that the district court used on its own later. I've reserved three minutes for my rebuttal. So if the Court has no more questions, I'll come back on rebuttal. All right. What — is it relevant that the district court, in effect, ordered these experts to be plaintiffs' experts? It's certainly something that colors, I think, this Court's analysis. I think with respect to the rule — I mean — I mean, our — is it relevant to us? Yes. I think that it is something that this Court should consider in how the experts came to be, because if you look at the issue of fairness and equity, which is what the district court said it was using, it certainly wasn't fair or equitable for my experts that it opposed and that it was — or that were appointed over its objection following the plaintiff's request to have someone else pay for their experts. Were the expert fees the amount? Were they challenged at all? I believe that — in my recollection, this was a long time ago. The trial was 10 years ago. My recollection is that there were some parts of the — You said they were paid. I mean, when were they paid? They were paid at the time. So I think there was an issue — 10 years ago after they died? Yeah. Right. Yes. They were paid a while ago because the district court released what was remaining in the $1.8 million actually. And was there any scrutiny of the reasonableness of the fees? There was an objection to the reasonableness of the fees. I think — my recollection, Judge Loken, is that it was from us and it dealt with some kind of expenses incurred by the experts. That's my recollection of — but in terms of the amount of the actual fees or time they spent — Was there an order on that? Yes, there was. Okay. You may reserve a minute 37. Thank you for your argument. Mr. Gustafson, we'll hear from you. May it please the Court, good morning, Your Honors. My name is Dan Gustafson. I represent the plaintiffs' appellees in this matter. Before I start my argument, let me just fall on my sword here, as I rightly should. It is correct that Mr. Bolte, Craig Bolte, has been released from custody. As you'll hear in my argument, I don't think it makes any difference. But that's a mistake in our briefs. It was a mistake in our lower court briefs. It's my responsibility, and I apologize for that, Your Honors. That should not have happened. First of all, let me say that there's no real dispute here that the winners get a strong presumption that they should have costs. That's the rule we have, and we're not challenging that. This Court has made clear, however, in Concord both, that it can be — that presumption can be rebutted when it is clear that it would be inequitable under all the circumstances. Under the circumstances in this case, it would be inequitable, and this District Court's opinion should be affirmed. Let me back up for just one second and talk a little bit about the appointment of the experts. The State suggests that the experts were appointed for the plaintiffs and only for the plaintiffs. However you would characterize the appointment process, both parties — I didn't mean to say that, if you're referring to my question. No, I was just referring to their position in their brief. I was referring to the direction to the experts after they were appointed. Go find a good plaintiff. There's no doubt there's some evidence in the record about that, Your Honor. There's also evidence that's in the record, but not in this record, but in the District Court record. They met many, many times with the MSOP without the plaintiffs present. They did all sorts of things ex parte with both sides. They didn't meet with me at all, but they met with the clients and they met with the MSOP people. But the point that's important here is that when the report came out, the report didn't favor the plaintiffs. It favored the defendants also. When we went to trial, the defendants relied on the 706 experts for a large number of their claims. In fact, the court ultimately granted summary judgment on many of the conditions of confinement claims because the 706 experts said these conditions are just fine, they're better than most in the country, and we shouldn't have a challenge about that. We didn't even appeal that finding. The experts' findings were so compelling. So to suggest somehow that these were only plaintiffs' experts and therefore all of the costs should be attributed to the plaintiff, it's just not accurate reflection of the record. It's in our brief, both below and here, how much they used the 706 experts. What about the $350,000? I mean, why should, assuming the lawyers had agreed to pay the $350,000 because the named plaintiffs were indigent at that stage, why should they be able to agree at that point and then say, but if we lose and you get taxed, we're not going to pay and you can just hide behind indigency. Yeah, so I don't think that – I don't want to mince the words too much here, but there wasn't an agreement to pay. What there was was an agreement to recommend that the court split the fee between the parties. So it's a little different than agreement to pay, right? We made a recommendation to the district court. Wasn't that recommendation made in good faith? Oh, for sure. On the understanding that the costs that the plaintiffs offered to pay would in fact be paid? Oh, for sure. You weren't going to offer the $350,000 and then say, but our guys are indigent, so we don't have to pay the $350,000. Somebody was going to pay the $350,000. That's right. All right. Isn't that relevant evidence on ability to pay now is my question? Because, as I said, it was an offer to split the costs. The district court rejected that offer, and under Rule 706B, the district court has the authority and the discretion to allocate the costs as they see fit under the circumstances of the case. That isn't a fairness response. I'm sorry? That isn't a fairness – I thought the question was why isn't that relevant to fairness? Oh, I thought he said it was why isn't it relevant to indigence. Well, I did, but you can answer both. I'll answer both. As to the indigence, the district court didn't say why they rejected our recommendation. All they said was that the State was going to pay until the case was over. I assume that it's because they thought the plaintiffs were indigent. That's why district court rejected it. That ignores – well, anyway. He didn't say that, but that ignores the reality that sometimes the lawyers agree to pay the costs as part of the financial arrangement with the clients. Yes, no doubt. Because of the contingency basis in 1988 and so forth, attorney's fees. Judge, I can tell you exactly why we made the offer. We made the offer at the time because we thought the pro se – we were going to ask the pro se project to pay those costs, and if the pro se project said no, my law firm was going to pay those costs. Okay? That's the state of the record. We made that offer in good faith. We fully intended to follow up on it. The district court didn't accept it. Okay? Yeah. And that was the district court's right under 706B and the case law that interprets that. They have the right to allocate the responsibility for court-appointed experts according to the party's abilities to pay. But I don't want this court to go away with any suggestion at all that I made that offer, I intended to comply with that offer, I was appointed by the pro se project and I intended to offer them for help, but if they said no to paying those costs, I was going to pay them out of my law firm. I want that to be clear. Understood. But then why wouldn't it be appropriate to tax the plaintiffs that amount now? Well, that would certainly be a basis for taxing the plaintiffs now that I agreed to pay their costs. But the rule of law in the country is that the lawyers aren't taxed costs, the clients are. And the fact is that the clients are indigent. Now, one of the things that I wanted to bring up with you is, Counsel, before you leave that, can you make a similar statement to the district court like you've made in the last two minutes here? You mean about my 50%? Yeah, that's your firm and the pro se project, the same words. Can you say the same thing to the district court? There wasn't a hearing and I don't think I put it in my papers. Okay. So there's no record of that in the district court, the status of whose record? Well, the only record is the letter that we sent to the judge offering to do it. Back at the time. Back at the time. Did the letter sound like what you told us? It's what the letter said. It's a letter in the record. The letter said that either the pro se project or the firm would pay. Was that in there? I don't believe the pro se project reference was in there. This is a sidelight, but just to be clear. Well, did it mention your firm, the letter? Oh, yeah, yeah, yeah. I don't think it mentioned my firm. I think it just said that the parties have agreed that the court should allocate the cost 50-50. So I don't think it said if the pro se project doesn't pay. The real answer to my question, that was not really before the district court in the way you presented it. Not in the way I presented it. No, I don't think so.  But that was my answer. It's also true the other side's not seeking a judgment or taxing or anything against the firm, right? That is true. Or the pro se project. That is true. And they certainly wouldn't have any claim against the pro se project. Thank you. Now I understand it.  And so once we got to the point where we got with the costs, then the factors that apply don't actually apply to that deal, right? I think it makes perfect sense that that deal could be enforced. And you could say remand for directions to impose the cost 50-50 because of that promise that was made. But that's not how we got here. How we got here was the court rejected that notion. And remember, the state appealed that issue in Carstens I. They appealed all of the 706 issues with respect to their appointment and all the rest of it. And you all rejected it in Carstens I. You said the issues surrounding the 706 experts don't trouble us. I don't have the exact words. But they were made to simplify a complex case and to try to reach an amicable resolution. So this was it. I don't think there's anything in that case, though, about the cost allocation. I don't think there's anything. I was going to ask you that, too. I don't think there's anything. And this is the very first one, right? The one in 845? Carstens I, 845. That's right. One other thing I wanted to point out, though, that although I thought it was inappropriate that they put in their reply brief to custody these folks, what they didn't put in their reply brief, and they certainly don't have a burden here. The state doesn't have the burden to prove anything. But they do have a duty of candor with the court. And the truth is, is that Minnesota Statute 246B requires the state of Minnesota to keep track of the financial wherewithal of the people that are committed to MSOP. And 246B, Subdivision 1, requires the state to determine the financial capabilities of each one of these MSOP folks. And the reason is because the costs of their commitment can be charged for them. Well, it's half, right? Up to half? No, it's half of their wages. Fifty percent of their wages, they take that. But the hundred percent of the cost of the care is subject to their ability to pay. So when they say that we didn't put any evidence of the time between the 13 years ago, IFP, and today, it's true. We didn't. All we said was their conditions haven't changed. But the state actually knows, because the state is charged with the responsibility of keeping up on the financial status of their care. Keep in mind that the cost of their care is something like $400 some dollars a day, more than a hundred. Is that in the record, counsel, is $400 a day? Is that in the record? I don't think that's in the record, but it's in the gamble. It's in the gamble case, the Eighth Circuit case, the gamble case, I think they talk about it. And they talk about the fact that not very many people are paying, but they are getting bills. Which would get paid first, the costs of the federal court or the cost of care? That's a good law school question, which judgment would get paid first.  So I just think that the state is being a little disingenuous when they come to you and they say, we don't know anything about the financial status of these folks. Actually, they know a lot. They know every time their circumstances change, the state is required to update the financial status. Let me just talk about a couple more things. The judge, the district court judge didn't just talk about the financial status. As you know, Concord Boat talks about all the circumstances. And the district court said this case was brought in good faith. I don't think good faith enough is enough to avoid a cost judgment. That's not the way we set up the cost judgments. But it is a consideration when the other factors are considered. The second thing the district court said was... Our circuits never use good faith itself, has it? All other circuits have. That's what your brief says, right? Yeah. Or your brief implies or infers. That's right. Okay, proceed.  And the other thing is the judge said this was a case of public importance. I think that's true. We've been litigating for now going on 15 years. I took this case pro bono. That's irrelevant to this cost issue. But for 15 years we challenged the process of the MSOP program from top to bottom. We lost, ultimately. But we made an important challenge to it. This was a case of public importance. And then the judge talked about the chilling effect. And the amicus brief that was submitted on behalf of the ACLU and some law firms and all the rest of it talked about it as well. So where does that leave us? It leaves us in a position where if you agree that the district court has broad discretion here, and I don't think there's any doubt about that, and if you agree that costs are presumptively applied unless under the circumstances that apply to this case you can show that such a result would be inequitable, we have a situation here where, although not perfect, the district court's opinion should be affirmed. This is a staggering amount of money to impose as costs against plaintiffs in a civil rights case. You can look long and hard, but you can't find a case where all of the court-appointed experts were charged to the named plaintiffs in a civil rights case. It's true that court-appointed experts count as costs, and there's no doubt that the district court judge made that clear, but this case is a situation where charging all of those costs to those folks would just be inequitable under the circumstances. I'm happy to take... What about something more than zero? Something more than zero would be fair, I think, Judge. Well, how would we come up with the number then? Is the $350,000 a fair number? I mean, I keep coming back to that because I infer that the clients must have been involved in that. You know, they would be offering to pay $350,000, but they would know that they're not personally going to pay it. And so maybe they should be incentivized to get an agreement with the lawyers or the Pro Se Project that before we agree to the expert motion, we're going to have an understanding about who pays the costs if we lose. Do you have any view on that? My time is up. I hope you'll let me answer. I appreciate it. I think this case has this unfortunate twist with the Pro Se Project. The Pro Se Project was new at the time. The Court appointed me to be the counsel for the class, pursuant to my agreement to do it through the Pro Se Project. We didn't have a retainer agreement we should have. We do now in Pro Se Project cases because of this very reason. If this Court feels like the plaintiff should pay something, I think you should reverse and remand for a hearing on that and what's a fair amount. And I think you should include in that, you know, this notion that the 706 experts were used by both sides and this notion that the agreement was rejected by the Court, even though it was made, and the notion of the indigence and all the rest of it. I don't dispute with you that the winning party often gets cost. That's the presumption, and there's a reason for that. It just seems to me like $800,000 is not an equitable result, and I think Concord Boat says it's not the right number. I want to go back to where I started. If we just reverse, flat out reverse, don't worry about remands, what money flows where? If you just reverse and order judgment as opposed to a remand? Yeah, tax cost. The full amount? Yeah. I don't think any money is going to change hands because I don't think any of the plaintiffs have any money. So I think what's going to happen is you're going to have a judgment sitting there, and 13 of the 14 people are in the sex offender program still committed. They're making $10 an hour, 50% of which is taken for their cost of care. Mr. Bolte, who's out, doesn't have any money as far as I know. I don't think anything's going to happen. I think what's going to happen is there's going to be a judgment, and I think the judgment lasts 10 years. That's my recollection. I think the judgment is good for 10 years. It's good for 10. So it will go to the collections department of the attorney general's office, and they'll monitor these people, and if anybody wins the lottery, they'll collect. I suspect that's right. To your question, Judge Carlton, whether this judgment has priority over the cost of care judgment, I don't know the answer to that. But if someone wins the lottery, they'll probably get both. Very well. Thank you. Thank you for your argument. It's always nice to be in St. Paul. Yes, sir. Mr. Acata, we'll hear rebuttal. Thank you, Your Honors. Judge Benton, I think your question about what was in the record as it related to the parties' agreement is at document 403 below. Thank you. The letter literally says the parties recommend an allocation of 50-50 between plaintiffs and defendants, but the parties are unclear as to when these experts will begin work. And then the sentence just kind of goes on from there.  You know, Your Honors, the appellees make the point that this is a staggering amount. It is a large cost judgment amount. There's no doubt about that. The reason it's this large is because the district court appointed 706 experts following the request, following the plaintiff's suggestion, over defendant's objection, and then appointed four. The district court asked for two suggestions from each party, and rather than choosing, the district court chose all four. That is why the amount is, to use the appellee's words, staggering. With respect to Judge Loken, what would happen on remand or a straight reversal, this point I think is made in the footnote near the end of our reply brief that talks about, we don't know whether it's a judgment that's collectible, but we think that it's certainly a judgment that the defendants, that the appellants are entitled to have. And we don't know what would actually come of that. And then the third point, Judge Colleton, is, I think this was maybe your question, is it related to, well, why is the answer zero? There's no record to support an allocation of zero. There's, the evidence in the record is that they were able to pay for half of the experts, and half of $732,000 is roughly $350,000, $360,000 or so, and that's what the record indicates. If the Court has no more questions. Well, but, I mean, Mr. Gustafson was quite forthcoming and explained how that would be handled. But I gather there's no agreement to pay costs that are ordered at the end of the case, no agreement with the plaintiffs. So how does the $350,000 really factor in here? Your Honor, if the plaintiffs had paid those costs, as if the District Court had honored the parties' agreement and ordered the allocation of $50,000, he would have never been able to tax the costs at the end, and we would not be out $830,000. We'd be out somewhere around $470,000, and that's a different, that would be a different cost judgment. Because he would have paid it up front, so it would have been taxable, Your Honor, at the end of the trial. I know that. I understand that. Who would have paid it up front? If the party, if the District Court had honored the parties' agreement, the plaintiffs would have paid the half of the 706X for costs. Why do you say honored the agreement, as though he did something dishonorable? Wasn't it a motion, and he denied the motion, or? It wasn't a motion. It was a letter, Document 403, where the court said, can you give me your, yeah, can you give me your recommendation? He declined the recommendation. He declined the proposal, correct. He declined the recommendation. He declined the, the District Court declined the recommendation, and we would have been, the plaintiffs would have had $365,000 or so of unrecoverable costs at the end, and our cost taxation at the end would have been significantly less. That's obvious. But the question is, why is it relevant to ability to pay? Because at some point, at least at this point. Current ability to pay. If we know that it was going to be paid by either the Pro Se Project or the law firm, but they don't have any agreement to pay after the case is over. Sure. And I think this is, there's two parts to the answer. One is the point that I think Judge Benton was getting at, about where in the record does it say exactly what a police counsel said about the source of the payment at the time. And there's no evidence in the record on that. And then I think the second point that I would make, Your Honors, in response to your question, Judge Colleton, is that it's not my client's burden. As, as the appellees pointed out in their argument, there is a strong presumption that a party can tax costs and that it is their burden to over, overcome that strong presumption. And the fact that they didn't put anything in is actually to their detriment. It shouldn't be to my client's detriment. Thank you, Your Honors. All right. Thank you for your arguments. The case is submitted. The court will file a decision in due course. Counsel are excused. Thank you, Your Honor.